Cara Leslie ALEXANDER,
et al., Plaintiffs,

v.

FEDERAL BUREAU OF
INVESTIGATION, et
al., Defendants.

No. Civ. 96–2123 RCL.

United States District Court,
District of Columbia.

April 13, 1998.

**2**

Larry Elliot Klayman, Judicial Watch, Inc., Washington, DC, for plaintiffs.

James Jordan Gilligan, Elizabeth Jane Shapiro, Julia Fayngold, U.S. Department of Justice, Washington, DC, for defendant FBI and Executive Office of the President.

David Evan Kendall, Nicole Kay Seligman, Paul Benedict Gaffney, Williams & Connolly, Washington, DC, for defendant Hillary Rodham Clinton.

James Franklin Fitzpatrick, Michael R. Geske, Arnold & Porter, Washington, DC, Peter Z. Zimroth Arnold & Porter, New York City, for defendant Bernard W. Nussbaum.

Randall James Turk, David S. Cohen, Miller, Cassidy, Larroca & Lewin, L.L.P., Washington, DC, for defendant Craig Livingstone.

Robert Weinberg, Bredhoff & Kaiser, P.L.L.C., Washington, D.C., Robert Muze, Stein, Mitchell & Mezines, Washington, D.C., for defendant Anthony Marceca.

### MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the court on The Executive Office of the President's Motion for Protective Order Regarding the Depositions of Rahm Emanuel, Ann Lewis, Sidney Blumenthal, and Michael McCurry, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. Upon consideration of the submissions of the parties, oral arguments, and the relevant law, the EOP's motion is granted at this time.

### I. Background

Plaintiffs served notices of deposition duces tecum pursuant to Rules 26, 30, and 34 of the Federal Rules of Civil Procedure upon Rahm Emanuel, Ann Lewis, Sidney Blumenthal, and Michael McCurry.[1] These depositions were to be conducted on March 25, 26, 27, and 30, respectively. On March 24, 1998, this court granted EOP's motion for expedited consideration of its motion for protective order filed in response to plaintiffs' notice and heard oral arguments regarding this motion and EOP's motion for sanctions on April 1, 1998.

In the EOP's motion for protective order, the EOP seeks an order vacating the notices of these depositions at least until such time as plaintiffs can make the requisite showing of need for the testimony of these individu-

---

1. Rahm Emanuel holds the position of Senior Advisor to the President for Policy and Strategy and Executive Assistant to the Chief of Staff. EOP Mot. for Protective Order Ex. G at 2 (Declaration of Rahm Emanuel). Ann Lewis holds the position of Assistant to the President and Director of Communications for the White House. *Id.* Ex. J at 2 (Declaration of Ann Lewis). Sidney Blumenthal holds the position of Assistant to the President. *Id.* Ex. I at 2 (Declaration of Sidney Blumenthal). Michael McCurry holds the position of Press Secretary. *Id.* Ex. H at 2 (Declaration of Michael McCurry).

als. The EOP also seeks an order directing plaintiffs' counsel in any future depositions to refrain from any further harassing, intimidating, or vexatious examination of any deposition witnesses. Furthermore, the EOP seeks an order requiring that any future depositions properly noticed by plaintiffs be attended and supervised by a magistrate or other judicial officer. Finally, the EOP requests an award of the attorneys' fees and costs incurred in the depositions taken as of the date of its filing of the motion for protective order.

## II. *Analysis*

### A. *EOP's Motion for Protective Order*

█ Generally speaking, "[a] party is entitled to depose a witness on all relevant issues to which the witness has knowledge." *CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y.1984). The EOP's efforts to prohibit the deposition of Emanuel, Lewis, Blumenthal, and McCurry are premised on Federal Rule of Civil Procedure 26(c) which provides:

> Upon motion by a party or the person from whom discovery is sought ... and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

Fed.R.Civ.P. 26(c). As the party seeking the protective order, the EOP bears the burden of making the showing of good cause contemplated by the rule. *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 145 F.R.D. 92, 95–96 (S.D.Iowa 1992); *Ahern*, 102 F.R.D. at 822. In this regard, the EOP must make a specific demonstration of facts to support their request for the protective order and may not rely on conclusory or speculative statements concerning the need for a protective order. Specifically, good cause exists under Rule 26(c) when justice requires the protection of a party or a person from any annoyance, embarrassment, oppression, or undue burden or expense. Moreover, the showing required under Rule 26(c) must be

sufficient to overcome plaintiffs' legitimate and important interests in trial preparation. *See Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir.1985) ("[T]rial preparation and defense ... are important interests, and great care must be taken to avoid their unnecessary infringement.").

█ In the instant case, the EOP advances two arguments in support of its motion for protective order. First, the EOP asserts that the four individuals whose depositions are currently noticed are very senior government officials of the level deserving the court's protection. The EOP also contends that these individuals possess absolutely no relevant information regarding the underlying claims in this case and that this contention is supported by declarations submitted by the EOP. Related to this point, the EOP argues that plaintiffs are conducting discovery for an improper purpose and as such, these individuals should not be subjected to being deposed by plaintiffs.

█ It is this court's conclusion that the EOP's arguments are persuasive on this issue and accordingly, the court will grant its motion for protective order until such a time as plaintiffs can make the requisite showing of need for the testimony of these high-ranking government officials. As of this date, plaintiffs have not met this burden. The EOP correctly notes that this court has acknowledged that litigants should ordinarily be required to depose those individuals with the most knowledge of the relevant facts before taking the depositions of high-ranking government officials. *Alexander v. F.B.I.*, C.A. No. 96–2123, Order of March 2, 1998.

In support of the motion for protective order, the EOP submitted the declaration of Charles F.C. Ruff. Ruff's declaration states that he is Counsel to the President and that he holds the rank of Assistant to the President within the Executive Branch. Ruff indicates that the individuals at issue all carry the rank of Assistant to the President and that with the exception of the Chief of Staff, Assistant to the President is the most senior rank within the White House. EOP's Mot. for Protective Order Ex. F ¶ 4. Moreover, each of these individuals is compensated at

the highest level of any White House staff pursuant to 5 U.S.C. § 105 as Level II officials. Id. ¶ 5.[2]

■ There is substantial case law standing for the proposition that high ranking government officials are generally not subject to depositions unless they have *some* personal knowledge about the matter and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere. *See, e.g., In re FDIC,* 58 F.3d 1055, 1060 (5th Cir.1995) (citing various cases for this proposition); *Simplex Time Recorder Co. v. Secretary of Labor,* 766 F.2d 575, 586–87 (D.C.Cir.1985); *National Nutritional Foods Ass'n v. FDA,* 491 F.2d 1141, 1144–46 (2d Cir.1974); *Kyle Engineering Co. v. Kleppe,* 600 F.2d 226, 231 (9th Cir.1979); *Peoples v. United States Dept. of Agriculture,* 427 F.2d 561, 567 (D.C.Cir.1970); *Church of Scientology of Boston v. IRS,* 138 F.R.D. 9, 12 (D.Mass.1990). Although most cases apply to agency heads, the rationale applicable to the protection of agency heads is equally applicable to the individuals plaintiffs seek to depose in the instant case. Given the nature of their positions at the White House, there is a substantial likelihood that depositions would significantly interfere with their ability to perform their governmental duties.

Furthermore, the EOP's second argument bolsters the conclusion that plaintiffs are not entitled to depose these individuals at this juncture in the litigation. The EOP contends that these individuals do not possess information relevant to the underlying claims in this litigation. The declarations submitted by these individuals support this conclusion. The declarations indicate that the declarants have never had any responsibility for conducting any FBI background investigations. Moreover, each declaration states that the declarant has no "knowledge of any plan by anyone associated with [the Clinton] White House to misuse, in any way, FBI background files." EOP Mot. for Protective Order Ex. G at 2 (Declaration of Rahm Emanu-

el); *id.* Ex. J at 2 (Declaration of Ann Lewis); *id.* Ex. I at 2 (Declaration of Sidney Blumenthal); *id.* Ex. H at 2 (Declaration of Michael McCurry).

It is worth noting that one of the arguments that plaintiffs have submitted to the court in support of their theory that it is necessary to depose these individuals is the recent disclosure of information contained in the federal security-clearance form of Linda Tripp. Plaintiffs' attempt to rely on this theory to support their discovery efforts demonstrates the essence of one of the primary disputes beleaguering discovery in this case—to what extent are plaintiffs entitled to pursue discovery of matters that extend beyond the immediate scope of the issues in this case. In the court's view the central question is whether plaintiffs are entitled to explore potential obtaining and misuse of government files in an effort to create an inference supporting their position that plaintiffs' FBI files were obtained and misused in the instant case.

Plaintiffs' theory regarding Tripp appears to be as follows. Information from Tripp's federal security-clearance form was improperly released to *The New Yorker* magazine by the Department of Defense. In his declaration submitted to the court, Sidney Blumenthal states that from 1992 to 1997 and immediately preceding his employment as an Assistant to the President, he was employed as a staff writer for *The New Yorker.* Plaintiffs submit that it is reasonable to infer that the Department of Defense leaked this information to *The New Yorker* at the direction of the White House with Blumenthal being the conduit through which this information was transmitted. Plaintiffs suggest that the leaking of the information contained in this file was an effort to discredit and smear a perceived enemy of the White House.

The question becomes whether plaintiffs should be able to pursue discovery into this and other matters bearing on the obtaining and misuse of government files in order to create the inference that it is reasonable to

---

**2.** The declaration specifies that the individuals are eligible to be compensated at Level II of the Executive Schedule. However, no individuals at the White House are actually compensated at

that salary level and the individuals receive Level III compensation. EOP's Mot. for Protective Order Ex. ¶ 5. *See also* 3 U.S.C. § 105.

conclude that FBI files were obtained and misused in the instant case. The court concludes that this is a permissible inference for plaintiffs to pursue in discovery. Circumstantial evidence is defined as "proof that does not actually assert or represent the fact to be proven but from which a factfinder can infer an increased probability that the fact exists." Mueller & Kirkpatrick, *Evidence* § 4.1 (1995). Certainly the inference that plaintiffs seek to establish fits within this definition. Whether any circumstantial evidence that plaintiffs may unearth will ultimately be admissible at trial is an issue that need not be considered at this time. Contrary to the concerns raised by the EOP, the court does not believe that permitting discovery into this limited area grants plaintiffs a "roving commission" to investigate any alleged scandal that might befall the White House or any other component of the Executive Branch.

Plaintiffs' pursuit of this theory in discovery does not alter the court's conclusion that at the present time it is inappropriate for plaintiffs to depose Emanuel, Lewis, Blumenthal, and McCurry. There are other avenues of discovery that plaintiffs may pursue to establish their theory. Due to the positions that these individuals occupy in the White House, their time should not be unduly interrupted or burdened with depositions conducted by plaintiffs at this time. *See In re United States*, 985 F.2d 510, 512 (11th Cir. 1993) ("High ranking government officials have greater duties and time constraints than other witnesses ... [T]he Supreme Court has indicated that the practice of calling high officials as witnesses should be discouraged.") (citing *United States v. Morgan*, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941)). If plaintiffs wish to question these individuals, the submission of interrogatories by plaintiffs is the appropriate manner in which to initially proceed to determine whether these individuals have *any* knowledge relevant to the misuse of government files. *See, e.g., Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.R.I.1985) (ordering the submission of interrogatories instead of permit-

ting plaintiffs to depose Lee Iacocca); *Community Fed. Savings and Loan Assn. v. Federal Home Loan Bank Bd.*, 96 F.R.D. 619, 621–22 (D.D.C.1983) (noting plaintiff's failure to demonstrate that "the information it hopes to elicit ... is not ascertainable by way of interrogatories.").

Accordingly, the depositions of these individuals are temporarily stayed until such time as interrogatories have been lodged and answered and plaintiffs present evidence demonstrating that these individuals have *some* relevant knowledge. At that time, the court will revisit the issue of whether depositions would be appropriate.

### B. EOP's Request for a Court–Appointed Deposition Referee

■ The EOP requests that this court exercise its discretion to control the discovery process by requiring that any future depositions properly noticed by plaintiffs be attended and supervised by a magistrate or other judicial officer.[3] As the court apprised counsel during the April 1, 1998 status conference, this court will not utilize either magistrate judges or other judicial officers to act as a deposition referee or to supervise depositions. If it is determined that such a referee is needed with respect to future depositions, this court will fill this role and the deposition will be conducted in open court.

In light of the guidelines set forth above for the scope of issues plaintiffs are entitled to explore—issues relating to the allegations in this case and other potential misuses of government files, the court concludes that the parties should be able to proceed within the acceptable bounds of civility and conform their conduct accordingly. For this reason, the request for a court appointed deposition referee is denied at this time.

### C. EOP's Request for Sanctions

■ Pursuant to Rule 26(g)(2), the EOP requests that this court impose sanctions against plaintiffs for conducting previous depositions for an improper purpose. The

---

**3.** Defendant Hillary Rodham Clinton joined in the request for a court appointed deposition ref-

eree in a motion filed March 20, 1998.

EOP contends that the totality of the circumstances in this case demonstrates that plaintiffs have abandoned any true and proper purpose to discover facts relating to the merits of their claims. The EOP supports the request for sanctions with the contention that the questions set forth by plaintiffs in the deposition are largely unrelated to the underlying issues in this case. The EOP also cites the "extra-judicial conduct of plaintiffs' counsel" as supporting the position that plaintiffs have conducted depositions for an improper purpose. In this regard, the EOP points to fund-raising letters utilized by plaintiffs' counsel and plaintiffs' counsel's appearances on various television programs armed with the videotapes of these depositions. Finally, the EOP asserts that plaintiffs' improper purposes are revealed in the abusive and argumentative nature of their questioning.

A review of the depositions at issue fails to demonstrate that sanctions are warranted. EOP's attack of plaintiffs' choice of deponents fails to recall that Begala hinted, even if in what he claims was a joking manner, that he reviewed FBI files of Republicans. Moreover, Stephanopoulos commented that White House allies were employing a then-unexplained "Ellen Rometsch strategy" in an effort to attack perceived adversaries of the White House, but refused to disclose who these White House allies were. Plaintiffs were certainly entitled to explore the possibility that these comments would lead to admissible evidence to support their underlying claims.

As stated, the court has also reviewed the depositions of Carville, Begala, Lenzner, and Stephanopoulos. While these depositions reveal that plaintiffs' counsel pursued questions outside the immediate scope of issues underlying this litigation, no rule of civil procedure so limits the questioning during a deposition to the extent sought by the EOP.

The EOP also points to the argumentative and abusive nature of plaintiffs' counsel's manner of questioning deponents. However, a review of the deposition transcripts demonstrates that all parties, including deponents themselves, have pushed the limits of civility in these depositions and all parties are admonished to conform their conduct to more appropriate standards.

The EOP directs this court to examine the objectively ascertainable circumstances in order to judge the propriety of plaintiffs' counsel's conduct during previous depositions. EOP's Mot. for Protective Order at 19–24. When such an examination is made, it is demonstrated that many of the EOP's citations to the deposition transcripts seem egregious only because many of the citations are provided to the court out of context. Moreover, although the court does note that plaintiffs' counsel did appear argumentative at times, in many circumstances he was dealing with equally argumentative witnesses and opposing counsel. Despite the general lack of civility extended by both sides, it is the conclusion of the court that based on the evidence and record before the court, sanctions are not warranted at this time.

III. *Conclusion*

For the reasons set forth herein, the Executive Office of the President's Motion for a Protective Order Regarding the Depositions of Rahm Emanuel, Ann Lewis, Sidney Blumenthal, and Michael McCurry is GRANTED. The EOP's requests for a court-appointed deposition referee and for sanctions are DENIED.

SO ORDERED.