**Seth Thomas LOW, Plaintiff,**

v.

**Christine Todd WHITMAN, Defendant.**

No. 00–2793 (JMF).

United States District Court,
District of Columbia.

May 29, 2002.

Diane Duhig, Swick & Shapiro, Washington, DC, for plaintiff.

Peter David Blumberg, Edward Alkalay, U.S. Attorney's Office, Washington, DC, for defendant.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

This case is before me for all purposes including trial. Ready for resolution is *Defendant's Motion for Protective Order Preventing the Depositions of Ray Spears and Ann Goode and Certification of Conference* ("Defs.Mot."). For the reasons articulated below, defendant's motion will be granted in part and denied in part.

1. Originally, plaintiff also sought to depose Ann Goode, former director of the EPA Office of Civil Rights ("Goode"). However, according to *Defendant's Reply to Plaintiff's Opposition to Defen-*

## BACKGROUND

Plaintiff, Seth Thomas Low ("Low"), claims that he was discriminated against on the basis of gender and age when he was not selected for a GS–15 position with the United States Environmental Protection Agency ("EPA"). Defendant seeks a protective order preventing the plaintiff's from taking the deposition of Ray Spears, Deputy Chief of Staff of the EPA ("Spears").[1]

## DISCUSSION

I.  *Legal Standard*

Federal Rule of Civil Procedure 26(c) provides:

> Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . .

Any party seeking to limit discovery under Rule 26(c) must demonstrate that, on balance, the harm to it outweighs its opponent's interest in discovering the facts:

> To do so, the movant must articulate specific facts to support its request and cannot rely on speculative or conclusory statements . . . Moreover, in the case of a protective order related to deposition testimony, courts regard the complete prohibition of a deposition as an "extraordinary measures [ ] which should be resorted to only in rare occasions" . . . Accordingly, courts apply a balancing test weighing the movant's proffer of harm against the adversary's "significant interest" in preparing for trial.

*dant's Motion for Protective Order* ("Defs.Reply"), plaintiff no longer seeks a protective order as to Goode's deposition.

*Jennings v. Family Management,* 201 F.R.D. 272, 275 (D.D.C.2001) (citations omitted).

## II. *Defendant's Position*

Defendant argues that Spears does not have any knowledge relevant to the claims or defenses in this matter because, in October 1997, Spears had nothing to do with the complained of non-selection. *Id.* at 6.

Defendant further contends that plaintiff has no need for the testimony of Spears since he has already deposed: (1) David O'Connor, Director of the Office of Human Resources and Organizational Services at the time of plaintiff's non-selection and now Deputy Assistant Administrator for the Office of Administration and Resources Management, (2) Michael Stahl, Deputy Assistant Administrator of the Office of Administration and Resources Management, and (3) Sylvia K. Lowrance, Principal Deputy Assistant Administrator of the Office of Enforcement and Compliance Assurance. Defendant represents that, like O'Connor, Stahl and Lawrence were extensively examined about diversity action plans. Defs. Reply at 6. In addition, plaintiff will have the opportunity to take the deposition of Ann Goode, the one time Director of the Office of Civil Rights; Goode too can speak to the significance of these plans to the manner in which EPA made its promotion decisions.

Third, defendant argues that senior government officials such as Spears should not be subjected to depositions in routine cases since public policy favors allowing high level officials to perform their jobs without the burdensome task of providing testimony in the numerous lawsuits filed against the government. *Id.* at 8.

Finally, defendant contends that Spears' deposition is being sought for reasons unrelated to plaintiff's claim of non-selection:

> A review of these complaints leaves it beyond any reasonable dispute that plaintiff's true reason for noticing the deposition of Ray Spears is to get him into the witness chair to question him on matters ranging from a report submitted to the EPA's Office of Inspector General to agency asser-

tions of deliberative process privilege made in a Freedom of Information Act Request. *Id.* at 9.

In essence, therefore, defendant is arguing that plaintiff is fishing for information regarding Spears' involvement in the settlement negotiations that occurred during the administrative phase of the case. *Id.* at 10. This, defendant argues, is outside the permissible scope of discovery.

## III. *Plaintiff's Position*

Plaintiff argues that Spears' testimony would be relevant to plaintiff's claim because Spears was working in the Office of General Counsel at the time plaintiff's EEO complaint was filed and because he "should have first-hand knowledge of the effects and implementation at the time of the agency's 'diversity' initiatives and, specifically, how such initiatives affected employment decisions and the existence and outcomes of any EEO challenges to such decisions." *Plaintiff's Opposition to Defendant's Motion for Protective Order Preventing the Depositions of Ray Spears and Ann Goode* ("Plains.Opp.") at 6. Plaintiff also contends that Spears is not sufficiently highly ranked within the agency to qualify for the type of immunity defendant claims he is due. *Id.* Finally, plaintiff argues that, although he also seeks the testimony of O'Connor, Spears has knowledge of the implementation of the agency's diversity initiatives that O'Connor does not. *Id.* at 9.

## IV. *Analysis*

Defendant argues that the deposition of Spears should be prohibited since he is a highlevel government official and thus his time is more valuably spent performing the duties that accompany his position. Acknowledging that Spears is not a cabinet official or agency head, defendant nonetheless claims that courts have protected the taking of depositions from lesserranked officials. Defs. Mot. at 8.

First, defendant cites the case of *Simplex Time Recorder Co. v. Secretary of Labor,* 766 F.2d 575 (D.C.Cir.1985). In *Simplex,* the court upheld the ALJ's decision not to compel the depositions of the Solicitor of Labor, the Secretary of Labor's Chief of Staff, the

Regional Administrator for the Administration and the Administration's Area Director. Without any discussion, the court merely stated that plaintiff failed to demonstrate that the information was not otherwise available. Thus, the opinion provides no guidance as to the qualifications of a "high-level" government official.

Next, defendant cites the case of *Alexander v. FBI*, 186 F.R.D. 1 (D.D.C.1998). In *Alexander*, the court granted defendant's motion for a protective order staying the depositions of three officials classified as "Assistants to the President," a position described as second in seniority to the White House Chief of Staff. The court further indicates that "each of these individuals is compensated at the highest level of any White House staff pursuant to 5 U.S.C. § 105 as Level II officials." *Id.* at 3–4.[2]

Although the cases cited by defendant do little to assist the court in defining a high-level official, the facts in this case appear to be similar to those of *Alexander* and thus support a finding that Spears may be of a sufficiently high rank to warrant protections beyond those afforded to deponents in the regular course. Spears, currently Deputy Chief of Staff to the Administrator of the EPA, states:

> In my current position as the Deputy Chief of staff, my duties include day-to-day administrative oversight of the Office of the Administrator. This includes responsibility for budget, personnel and resources issues for the Office. I also provide day-to-day management oversight for the Staff Offices within the Office of the Administrator.

Defs. Mot. at Government Exhibit 2.

As a member of the Senior Executive Service with responsibility for budget, personnel, and resource issues, it is clear that Spears is in a position of substantial authority. In addition, the title Deputy Chief of Staff indicates that Spears is obviously not far from the Chief of Staff in terms of seniority. Thus, it seems apparent that an all day deposition might significantly hinder his ability to function as a high-level public servant.

The next issue is whether Spears has personal knowledge of plaintiff's non-selection. Plaintiff claims that Spears does have first-hand knowledge of his non-selection since he worked in the Office of General Counsel at the time of the non-selection and since he "advised Mr. Hooks when the latter consulted him about the administrative EEO complaint plaintiff had filed regarding this non-selection." Plains. Opp. at 6. Plaintiff also indicates that Spears' admits in his declaration that during the relevant time period, he oversaw employment issues for the agency. *Id.* at 6. Defendant claims that plaintiff's stated reason for wanting to depose Spears is actually pretextual and that the real reason Spears' deposition is sought relates to the disposition of plaintiff's EEO complaint by the EPA. Defs. Mot. at 10.

While it does appear that Spears was the topic of plaintiff's EEO complaint, it is not at all apparent from the record that Spears has any first-hand information about plaintiff's nonselection. Plaintiff cites the deposition testimony of Craig Hooks ("Hooks") as evidence that Spears has personal knowledge of plaintiff's non-selection. In fact, Hooks merely states he asked Spears whether the woman chosen for the position at issue was any good:

> Q    Have you ever communicated with Ray Spears about Mr. Low's EEO case?

---

2.  Plaintiff also cites two cases that are not from the D.C. Circuit: *Church of Scientology of Boston v. IRS*, 138 F.R.D. 9 (Mass.Dist.Ct.1990), and *Sykes v. Brown*, 90 F.R.D. 77 (E.D.Pa.1981). In *Church of Scientology*, plaintiff sought to depose Marcus Owens, Director of Exempt Organizations Technical Division, National Office of the I.R.S. The court ultimately prohibits Owens' deposition because plaintiff failed to demonstrate that the information was not otherwise available. However, the court does suggest, albeit briefly and without discussion, that Owens is a high-level government official: "Mr. Owens occupies a Senior Executive, Level 4 position and is responsible for the management of the Exempt Organizations Technical Division." *Church of Scientology of Boston v. IRS*, 138 F.R.D. at 12. This opinion provides no insight as to the demarcation between low and high level officials. In *Sykes*, the court granted defendant's motion for a protective order prohibiting the deposition of the Director of the Defense Logistics Agency. Again, this opinion does nothing to inform our current assessment of Spears' status within the government hierarchy.

A  No.

Q  In any way, whether over the telephone, in-person, in writing of any form?

A  Perhaps when the original EEO case was originally filed, knowing that Ray used to actually head up this part of the office of general counsel, it seemed to met that I did ask Ray if—I cant' remember, at the time I think Bridget—I can't think of Bridget's last name right now—at the time I believe I might have asked Ray is Bridget good? I just don't remember her last name?

Q  Is that Bridget Shea?

A  Bridget Shea

Q  And you asked her that—or you said to her what?

A  Asked Ray is Bridget good?

Plains. Opp. at Tab 6, Pages 227–28.

Far from showing that Spears has any personal knowledge regarding plaintiff's EEO complaint, the above passage merely indicates that Spears was asked a question.[3] Thus, even though Spears may have had oversight responsibility for employment issues while at the Office of General Counsel, plaintiff's assertions fall short of even suggesting that Spears has any personal knowledge relevant to plaintiff's case.

In addition, it appears that the information plaintiff seeks is readily available from other sources. For example, although plaintiff seeks information about "the policies and practices influencing or guiding the non-selection"[4] in this case, Spears clearly states in his declaration that he "was not responsible for developing the Agency's diversity policies." Defs. Mot. at Government Exhibit 2. Finally, although plaintiff seeks information regarding Spears' "knowledge of the agency's affirmative action activities as of Fall 1997 is, [sic] including his first-hand knowledge based on the required reporting of various offices within defendant during 1998," it is hard to fathom why Spears is the only individual with access to information about the agency's affirmative action activities in the fall of 1997 and the impact those activities had on personnel decisions such as plaintiff's non-selection.[5] Indeed, according to the defendant, four witnesses have or will be extensively questioned about EPA's diversity plans and the impact they may have had on personnel decisions.

The determination of whether to issue a protective order requires, as I have explained, a balanced exercise of discretion. In this case, we begin with the premise that the witness is a high ranking official who did not participate in the employment decision at issue. The only relevant testimony he can give appears to have been explored thoroughly in other depositions. On this record, the balance tips in favor of granting the protective order. I say "on this record" because I do not have the transcripts of the other witnesses who, defendant claims, have provided the information plaintiff seeks from Spears. If plaintiff can establish from those transcripts or elsewhere a compelling case that Spears can be expected to provide information that no one else has, I would certainly reconsider my decision.

---

**3.** Plaintiff's opposition contains only eight pages of the transcript of Hooks' deposition and does not indicate whether or not Hooks received an answer from Spears regarding Bridget Shea's qualifications. Plains. Opp. at Tab 6.

**4.** Plains. Opp. at 1.

**5.** In defendant's reply, defendant argues for the first time that the deposition of Spears should be prohibited because plaintiff clearly seeks information protected by the attorney-client privilege. Defs. Reply at 3. However, this argument is ill-conceived and ill-timed. Simply because plaintiff "seeks the deposition of Ray Spears because Mr. Spears 'oversaw legal aspects regarding employment issues'" does not necessarily mean that the testimony sought would be protected by the attorney-client privilege. Without more information, the court cannot summarily conclude that the testimony plaintiff seeks consists of "confidential communications made by the client to an attorney for the purpose of seeking legal advice" and is therefore protected by the attorney-client privilege. *Nesse v. Pittman,* 206 F.R.D. 325, 328 (D.D.C.2002)(*citing Tax Analysts v. Internal Revenue Service,* 117 F.3d 607, 617 (D.C.Cir.1997)). In addition, if the court were to permit Spears' deposition to go forward, defendant would have ample opportunity to assert the attorney-client privilege as to individual questions, rather than as to the deposition as a whole.

## CONCLUSION

For the reasons stated above, *Defendant's Motion for Protective Order Preventing the Depositions of Ray Spears and Ann Goode and Certification of Conference [# 18] will be* **GRANTED** in part and **DENIED** in part.[6]

**SO ORDERED.**

---

**6.** Since defendant's original motion for a protective order sought the deposition testimony of both Spears and Goode, even though the testimony of Goode is no longer an issue, the court's ruling as to this motion must address both depositions and is therefore worded as "granted in part and denied in part."