Eric W. PAYNE, Plaintiff,

v.

DISTRICT OF COLUMBIA,
et al., Defendants.

Civil Action No. 10–0679 RWR/DAR.

United States District Court,
District of Columbia.

Oct. 31, 2011.

Donald M. Temple, Donald M. Temple, P.C., Washington, DC, for Plaintiff.

Reid Whitten, Office Of Attorney General, Sarah L. Knapp, Attorney General's Office of

The District of Columbia, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

DEBORAH A. ROBINSON, United States Magistrate Judge.

Pending for determination by the undersigned United States Magistrate Judge are Defendant District of Columbia's Motion for a Protective Order on Behalf of Mayor Vincent C. Gray (Document No. 23), and the Motion of Councilmembers Jack Evans and Jim Graham to Quash Subpoenas (Document No. 24). Upon consideration of the motions, the memoranda in support thereof and in opposition thereto and the entire record herein, both motions will be denied.

## BACKGROUND[1]

From May, 2006 until January, 9, 2009, Plaintiff served as Director of Contracts for the Office of the Chief Financial Officer, an agency of the District of Columbia responsible for, *inter alia,* management of the procurement process for the D.C. Lottery and Charitable Games Board ("D.C. Lottery"). Amended Complaint (Document No. 2), ¶¶ 10, 66. In this action, Plaintiff seeks judicial review of his termination from the position, and of allegedly defamatory statements made by Defendant District of Columbia thereafter. More specifically, Plaintiff alleges that his termination was violative of his liberty interest; in retaliation for making protected disclosures regarding, *inter alia,* abuse of authority and potential corruption, and his refusal to carry out an illegal order. *Id.,* ¶¶ 73–77, 85–88, 90–93. Plaintiff's claims are for violation of his Fifth Amendment liberty interest (Count I); violation of his rights under the D.C. Whistleblower Protection Act, D.C.Code § 1–615.51 *et seq.,* against Defendant District of Columbia and Defendant Natwar Gandhi, the District's Chief Financial Officer, in his official capacity (Count III), and wrongful termination against public policy against Defendant District of Columbia and Defendant Gandhi in his official capacity (Count IV). *Id.,* ¶¶ 89–93; *see also* March 29, 2011 Order (Document No. 13) (dismissing Counts II and V). Allegations

---

1. *See generally Payne v. District of Columbia,* 773 F.Supp.2d 89, 92–94 (D.D.C.2011).

germane to the pending motions include those with respect to communications regarding the D.C. Lottery contract involving Defendant Gandhi and members of the Council of the District of Columbia. *See* Amended Complaint, ¶¶ 43, 45–46, 51.

## CONTENTIONS OF THE PARTIES

Plaintiff seeks to depose Vincent C. Gray, whose tenure as Chair of the Council of the District of Columbia preceded his election as Mayor, and Jack Evans and Jim Graham, current members of the Council, regarding their communications with Defendant Gandhi about the D.C. Lottery contract. Common to both pending motions to preclude such depositions is the contention that the would-be deponents, by virtue of the District's Speech or Debate Clause, have "absolute legislative immunity" which precludes them from being compelled to testify regarding their legislative activities. Memorandum of Points and Authorities in Support of the District of Columbia's Motion for a Protective Order on Behalf of Mayor Vincent C. Gray ("Defendant's Memorandum") (Document No. 23) at 5, 6 ("This privilege bars plaintiff from taking the Mayor's deposition regarding the legislative activities at issue in this action[,]" and "[m]eetings that might have informed the Mayor's decisions during this legislative process are similarly protected."); Statement of Points and Authorities in Support of the Motion of Councilmembers Jack Evans and Jim Graham to Quash Subpoenas ("Non-party Movants' Memorandum") (Document No. 24) at 5, 8 ("The District's Speech or Debate Clause provides members of the Council with an absolute legislative privilege from being compelled to testify about actions taken within the scope of their legislative duties[ ]"; "the Councilmembers' efforts to gather information, deliberations, and votes related to the contract are legislative activities.").

Defendant District of Columbia objects to the deposition of Mayor Gray on the additional ground that "[a]llowing the deposition to go forward would be unduly burdensome on Mayor Gray." Motion for a Protective Order on Behalf of Mayor Vincent C. Gray at 1; *see also* Defendant's Memorandum at 3 ("As a high ranking official, Mayor Gray should not be burdened by deposition absent extraordinary circumstances that are not present here."). Defendant submits that "[n]othing in the complaint demonstrates that Mayor Gray had any personal involvement in the decisions to demote plaintiff or terminate his employment, which are at the heart of plaintiff's claims[,]" and that "[t]o the extent that plaintiff seeks testimony regarding meetings that the Mayor may have had with the Lottery Contract bidders, plaintiff can obtain that information elsewhere—from the bidders." Defendant's Memorandum at 4.

Plaintiff filed a consolidated opposition to both motions, and included as an exhibit his affidavit to support his contention that legislative immunity does not bar the proposed depositions. Plaintiff's Opposition to Collective Motions for Protective Orders on Behalf of Mayor Vincent C. Gray, Council Member Jack Evans and Council Member Jim Graham ("Plaintiff's Opposition") (Document No. 27) at 1, 4–13 and Exhibit 1. Plaintiff concedes that "Council review, hearing consideration and approval [are] ... protected by legislative immunity." *Id.* at 2–3. However, Plaintiff proffers that each of the three would-be deponents "engaged in direct communications with the CFO, [Defendant] Natwar Gandhi, regarding the immediate contract award during a period of time when there was great pressure being exerted upon [Plaintiff] to cancel the lottery contract award," and that such activities "fell far outside of that legislative process[.]" *Id.* at 3; *see also id.* at 3–4 ("Plaintiff asserts that the Mayor, in his capacity as Chairman of the City Council, and council members Evans and Graham engaged in improper communications with the CFO and their mutually aligned political interests, and that these communications, which likely influenced [Plaintiff's] professional demise and ultimate termination, are relevant to his wrongful termination and [whistleblower] retaliation claims.").

Plaintiff, in the affidavit in support of his opposition, states, more specifically, that

certain D.C. council members ("CMs"), including Chairman Gray, and CMs Evans and Graham[,] engaged in direct communi-

cations with the CFO regarding the immediate contract award during a period of time when there was great pressure being exerted upon me to cancel the lottery contract award. These were inappropriate attempts to influence or change the contract outcome, which I resisted on numerous occasions.

Plaintiff's Opposition, Exhibit 1 (Document No. 27–1) (hereinafter "Plaintiff's Affidavit"), ¶ 2; *see also id.,* ¶ 7 ("Commencing in April 2008 and continuing through May 2008, I was compelled to attend and participate in several highly unusual meetings in which the CFO, certain city council members, my supervisors, and I met to specifically discuss the proposed lottery contract" and the "involvement[ ]" of a certain joint venture partner); ¶ 10 (with respect to final meeting with then-Chair Gray, Defendant Gandhi and others, "[i]t was then my belief that any meeting with a council member and the CFO to discuss modification or cancellation of an awarded contract was inappropriate and constituted efforts to unduly influence the contract selection process[ ]"; "[i]t was my sense that the CFO was being pressured to end the contract solicitation and to demote and/or terminate me in order to pave the way to rebid the lottery contract.").

Plaintiff characterizes Defendant District of Columbia's objection to the deposition of Mayor Gray on the ground that a deposition would pose an undue burden as "weak and unsupported by legal authority." Plaintiff's Opposition at 18. Plaintiff proffers that "[t]he primary communications at issue involve communications between the Mayor in his capacity as former Council Chairman and the CFO and other council members," and that he "has demonstrated that Mr. Gray may have enjoyed a greater involvement in this issue than acknowledged by Defendant[.]" *Id.*

Defendant District of Columbia, in its reply, maintains that "[t]he scant factual assertions regarding plaintiff's interactions with the Mayor show that he is seeking testimony about legislative activities." District of Co-

lumbia's Reply to Plaintiff's Opposition to Motion for a Protective Order on Behalf of Mayor Vincent C. Gray ("Defendant's Reply") (Document No. 28) at 3. Defendant District of Columbia also maintains that "even if Mayor Gray participated in any discoverable conversations, information about these conversations is available from the other participants[.]" *Id.* Non-party movants, in their reply, maintain that "Plaintiff's proffer fails to point to specific facts sufficient to place Councilmembers' actions outside the scope of the Speech or Debate Clause[ ]"; that "even if Plaintiff's allegations were true, Councilmembers' actions still fall under the broad protections of the Speech or Debate Clause[,]" and that "even if Councilmembers' actions are not deemed to be core legislative activities, their actions are so closely linked to their review of the lottery contract that the actions must still be protected." Councilmembers Jack Evans and Jim Graham's Reply to Plaintiff's Opposition to Collective Motions for Protective Orders ("Non-party Movants' Reply") (Document No. 29) at 4.[2]

On September 23, 2011, the undersigned heard the arguments of counsel with respect to the pending motions. *See* 09/23/2011 Minute Entry. At the hearing, counsel for Defendant District of Columbia stated that "I would concede that there were conversations [between then-Chair Gray and Defendant Gandhi] about the lottery contract." Counsel for non-party Movants stated that "for the purposes of this argument I do concede" that non-party Movants and Defendant Gandhi had conversations regarding the D.C. Lottery contract of the type described by Plaintiff in his affidavit. *See also* Non-party Movants' Reply at 3 n. 1 ("For the purposes of this pleading, the Council does not dispute that several meetings took place between April 2008 and May 2008, involving Plaintiff, his supervisors, the CFO, and Councilmembers, in which the proposed lottery contract was discussed. The Council does not agree that these meetings were unusual or improper."). Defendant and non-party Movants characterized the conversations as "legislative" in nature because their purpose was to

---

**2.** While both Defendant District of Columbia and non-party Movants advance arguments predicated, at least in part, on the supposed deficiencies of Plaintiff's affidavit, neither offers an affidavit, declaration or any other evidence in support of their respective motions.

gather information; Plaintiff, on the other hand, characterized their nature as "political[,]" and stated, through his counsel, that he is "not interested in the communications in the legislative roundtable or the Council on the whole."

## APPLICABLE STANDARDS

### Speech or Debate Clause

The District of Columbia Code provides, in pertinent part, that "[f]or any speech or debate made *in the course of their legislative duties,* the members of the Council shall not be questioned in any other place." D.C.Code § 1–301.42 (emphasis supplied). "Legislative duties"

> shall include the responsibilities of each member of the Council in the exercise of such member's functions as a legislative representative, including but not limited to: Everything said, written or done during legislative sessions, meetings, or investigations of the Council or any committee of the Council, and everything said, written, or done in the process of drafting and publishing legislation and legislative reports.

D.C.Code § 1–301.41(b); *see also Dominion Cogen, D.C., Inc. v. District of Columbia,* 878 F.Supp. 258, 261 (D.D.C.1995) ("The legislative history and the case law interpreting this statute make clear that it is modelled [sic] on the Speech or Debate Clause of the United States Constitution, and that the statute was intended to be interpreted liberally, so as to protect 'genuine legislative functions ... which are exercised beyond the mere confines of the Council Chambers or a committee meeting place.' ") (internal quotations and citation omitted).

■ This court has held that "[a]ccordingly, in determining whether legislative immunity applies, the critical question is whether the action at issue was undertaken within the 'legislative sphere.' " *Williams v. Johnson,* 597 F.Supp.2d 107, 113 (D.D.C.2009) (quoting *Alliance for Global Justice v. District of Columbia,* 437 F.Supp.2d 32, 36 (D.D.C.2006) (internal quotations omitted)); *see also MINPECO, S.A. v. Conticommodity Services, Inc.,* 844 F.2d 856, 860 (D.C.Cir.1988) ("[T]he critical inquiry, in determining questions of constitutional immunity, is whether the action at issue, whether legal or not, was undertaken within the 'legislative sphere.' ") (citations and internal quotations omitted). Thus, a prerequisite to the application of legislative immunity is that the legislative acts "must be an integral part of the deliberative and communicative processes by which Members [of the legislative branch] participate in [legislative] proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of [the legislature]." *Gravel v. United States,* 408 U.S. 606, 625, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972).

■ The Supreme Court, consistent with this reasoning, has held that activities that are "political in nature rather than legislative" are not shielded by the Speech or Debate Clause. *United States v. Brewster,* 408 U.S. 501, 512, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972). "Members of Congress are constantly in touch with the Executive Branch of the Government and with administrative agencies—they may cajole, and exhort with respect to the administration of a federal statute—but such conduct, though generally done, is not protected legislative activity." *Gravel,* 408 U.S. at 625, 92 S.Ct. 2614; *see also Chang v. United States,* 512 F.Supp.2d 62, 64 (D.D.C.2007) ("[T]he scope of this immunity only extends to conduct which is within the 'sphere of legitimate legislative activity.' ") (quoting *Doe v. McMillan,* 412 U.S. 306, 312, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973)).

### Undue Burden

■ Generally, "a party is entitled to depose a witness on all relevant issues to which the witness has knowledge." *Alliance for Global Justice v. District of Columbia,* No. Civ.A. 01–00811, 2005 WL 1799553, at *1 (D.D.C. July 29, 2005) (citation omitted). "However, '[c]ourts have consistently recognized the undue burden that falls on public officials as a consequence of compulsion to attend depositions.' " *Id.* (citations omitted).

■ This court has held that "[a] protective order for a high-ranking official should be granted if the court determines (1) the

individual is high-ranking and (2) applying a balancing test, the movant's concern of harm to the official outweighs 'the adversary's significant interest in preparing for trial.'" *Byrd v. District of Columbia*, 259 F.R.D. 1, 6 (D.D.C.2009) (citation omitted).[3] In undertaking this determination, "courts look to whether the official has 'some personal knowledge about the matter' and if the testimony will be 'relevant and material[.]'" *Id.* (citations omitted). "Additionally, the movant must 'make a specific demonstration of facts to support [its] request for the protective order and may not rely on conclusory or speculative statements concerning the need for a protective order.'" *Id.* (citing *Alliance for Global Justice*, 2005 WL 1799553, at *1). "Lastly, the party seeking the deposition must make 'a showing that the information cannot be obtained elsewhere.'" *Id.* at 7 (internal citations omitted; emphasis in original); *see also Alexander v. FBI*, 186 F.R.D. 1, 4 (D.D.C.1998) ("There is substantial case law standing for the proposition that high ranking government officials are generally not subject to depositions unless they have *some* personal knowledge about the matter and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere.") (citations omitted; emphasis in original).

## DISCUSSION

### Speech or Debate Clause

■ The undersigned finds that the movants—two members of the Council and its former Chair—have failed to demonstrate that their conversations regarding the D.C. Lottery contract with Defendant Gandhi—a member of the executive branch of the District government—are protected by the Speech or Debate Clause. Mayor Gray, during his tenure as a member of the Council, as well as current members Evans and Graham, were certainly free to "cajole[ ] and exhort" the executive branch of the District government; however, "such conduct, though generally done, is not protected legislative activity." *Gravel*, 408 U.S. at 625, 92 S.Ct. 2614.

Movants' efforts to bring the conversations within the ambit of the Speech or Debate Clause by characterizing them as "for the purpose of gathering information[,]" or "information gathering[,]" are unavailing. The United States Supreme Court, in addressing the authorities on which the District's Speech or Debate Clause is based, held that "[t]he heart of the Clause is speech or debate in [a legislative body][,]" and that "[i]nsofar as the Clause is construed to reach other matters, [those other matters] must be an integral part of the deliberative and communicative processes by which Members [of the legislative branch] participate in committee and [legislative] proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of [the legislature]." *Gravel*, 408 U.S. at 625, 92 S.Ct. 2614. The conversations at issue here were plainly outside the realm of speech or debate in a "legislative body"; thus, the Speech or Debate Clause would shield the conversations from discovery only if the conversations were "an integral part of the [Council's] deliberative and communicative processes[.]" *Id.*

■ Movants urge the court to find that the conversations were for the purpose of gathering information regarding the D.C. Lottery contract, and thus, were indeed "an integral part of the [Council's] deliberative and communicative processes[.]" This court has left no doubt that information-gathering in the context of an investigation by a Council committee is protected by the Speech or Debate Clause. *Williams*, 597 F.Supp.2d at 114 ("A legislature's efforts to acquire information during formal committee investigations or through the issuance of subpoenas . . . clearly constitute 'legislative acts' covered by the Speech or Debate Clause.") (citations omitted); *see also MINPECO, S.A.*, 844 F.2d at 859–862 (affirming district court's order quashing subpoena for documents gathered by congressional subcommittee, even though a report based in part on a review of the documents was transmitted to the executive branch); *Chang*, 512 F.Supp.2d

---

**3.** Courts of this jurisdiction have repeatedly held that the Mayor of the District of Columbia is a high-ranking official. *Id.* at 6–7 (citations omitted).

at 65–66 (documents compiled and considered during the course of an investigation conducted by the Council of the District of Columbia's Committee on the Judiciary shielded from production by the Speech or Debate Clause); *Alliance for Global Justice*, 437 F.Supp.2d at 37 (granting motion to quash Rule 30(b)(6) deposition of the District of Columbia regarding a Council investigation, as well as the Council's understanding and interpretation of its own statutes, finding that "[b]oth areas of testimony clearly fall within the 'legislative sphere' and are shielded by the District's speech and debate statute.").

However, the issue of whether the Speech or Debate Clause shields from discovery a legislator's call or visit to a member of the executive branch of government appears more nuanced. *Williams*, 597 F.Supp.2d at 114 ("The question of whether *informal* investigations and information-gathering [are] equally covered, however, is less clear.") (emphasis in original); *cf. Jewish War Veterans v. Gates*, 506 F.Supp.2d 30, 55 (D.D.C.2007) (lower federal courts "are divided on the question[ ]" of whether the Speech or Debate Clause "covers *informal* information gathering by Members [of Congress] or their staff.") (emphasis in original). In two notable instances, judges of this court have found that the informal gathering of information by a member of the legislative branch from a member of the executive branch is shielded from discovery by the Speech or Debate Clause. *See Williams*, 597 F.Supp.2d at 117 (councilmember's communications with an agency as to which the councilmember had oversight authority, regarding alleged misconduct at the agency, constituted information-gathering protected by the Speech or Debate Clause); *Jewish War Veterans*, 506 F.Supp.2d at 55–57 (legislators' communications with, among others, various members of the executive branch, protected by the Speech or Debate Clause "[t]o the extent that [such] communications[ ] ... constitute information gathering in connection with or in aid of [their] legislative acts," "the most obvious of which stem from their sponsorship of [a house resolution]."). Thus, integral to

those decisions was a finding that "the information is being gathered as part, in connection with, or in aid of a legitimate legislative act[ ]" (*id.* at 57), or that the allegations of the party seeking the discovery "establish only that [the councilmember] was conducting an investigation based on [the party's] claims of misconduct at [the agency as to which the councilmember exercised oversight]" (*see Williams*, 597 F.Supp.2d at 117).

In stark contrast, the facts presented here warrant no such finding. Rather, the only finding which is warranted is that the communications which are the subject of Plaintiff's discovery request are the current and former councilmembers' "contact[s] [with] an executive agency in order to influence its conduct[.]" *Jewish War Veterans*, 506 F.Supp.2d at 54 (citations omitted).[4] As the communications at issue were no more than attempts to "cajole" or "exhort" Defendant Gandhi, a member of the District's executive branch, they are not "legislative acts" for which the Speech or Debate Clause affords a shield from discovery.

### Undue Burden

 The undersigned finds that Defendant District of Columbia has not shown that an order requiring Mayor Gray to be deposed with respect to conversations he had with Defendant Gandhi regarding the D.C. Lottery contract is an appropriate exercise of the court's discretion. No absolute rule precludes the deposition of a high-ranking government official solely on the basis of the would-be deponent's status. *Cf. Clinton v. Jones*, 520 U.S. 681, 704–05, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) (observing that sitting Presidents of the United States have, both voluntarily and pursuant to court order, answered interrogatories, produced documents and given testimony at depositions).

 The very cases on which Defendant District of Columbia relies virtually compel the finding that its argument is not well founded: a protective order relieving high-ranking government officials of the undue burden of depositions is warranted only where "the information sought from them cannot be obtained from any other source

4. *See also* n. 2, *supra.*

*and* they have some personal knowledge about the matter." *Willingham v. Ashcroft,* 226 F.R.D. 57, 65 (D.D.C.2005) (citations omitted; emphasis supplied); *see also Alexander,* 186 F.R.D. at 4 (citations omitted); *Alliance for Global Justice,* 2005 WL 1799553, at *2. By its acknowledgment that Mayor Gray, while Chair of the Council, had conversations with Defendant Gandhi of the type described by Plaintiff in his affidavit, Defendant District of Columbia cannot suggest that Gray has no personal knowledge about those conversations.

Nor can Defendant District of Columbia fairly suggest that the information Plaintiff seeks can be obtained from some other source. In theory, Plaintiff could ask other participants in the conversations among members of the Council and members of the executive branch what Council Chair Gray said; however, in reality, it is only Gray who can testify about his recollection of the conversations, and offer a non-hearsay account of what he said. *See Byrd,* 259 F.R.D. at 5 (depositions of government officials allowed where plaintiffs "sufficiently show[ed] that none of the contested depositions are cumulative or duplicative or imposes a burden that outweighs their likely benefit[.]").

**CONCLUSION**

For all of the foregoing reasons, it is, this 31st day of October, 2011,

**ORDERED** that Defendant District of Columbia's Motion for a Protective Order on Behalf of Mayor Vincent C. Gray (Document No. 23) is **DENIED,** and the Motion of Councilmembers Jack Evans and Jim Graham to Quash Subpoenas (Document No. 24) is also **DENIED;** and it is

**FURTHER ORDERED,** consistent with the findings sets forth herein, that the depositions of Messrs. Gray, Evans and Graham shall be limited to their respective discussions with Defendant Gandhi regarding the D.C. Lottery contract; and it is

**FURTHER ORDERED** that each such deposition shall be limited to no more that three and one-half hours; and it is

**FURTHER ORDERED** that the depositions for which this order provides shall be completed by no later than November 14, 2011.